Mark Weintraub from the Federal Defender Office in UGA on behalf of the appellant Terry Engblom. At the outset, I'd like to point out an error on page 12 of our opening brief that I didn't discover until preparing for this argument because it's substantive and I want to make sure it's clear. Page 12 of your opening brief? Got it. Page 12 of the second paragraph should read that the court held that this did not constitute the functional equivalent of interrogation about halfway down in that paragraph. I apologize for that error. The court held that this did constitute? It says did. There should be a not, right? So I didn't want that to go uncorrected. May it please the court on... Why is this interrogation? It's on the man's own front porch. Why is it interrogation? Yeah. Aside from the question of whether there is custody as to whether it's interrogation or not. I'm sorry, that's what I meant to ask. I think the question of whether it's interrogation or not is best answered by distinguishing this case from the Marina Flores case, which is discussed in both briefs. I'd like you to approach it a little differently just to help me get it clear. I'm looking for custodial interrogation. When I look at the Miranda cases, there are so many published and they're just all over the board. They are. And I want to know kind of in a sentence or two why it's custodial and why it's interrogation when basically they're talking about a search and they're on the guy's front porch. They're on his front porch. He is confronted with evidence of guilt. The physical surroundings are such that a reasonable person, a reasonable innocent person in his situation would not have felt free to leave. I thought he just couldn't feel free to go back inside. Was there anything to stop him from saying, well, you know, kind of like when you go back to your hotel room and the maids in the room and you figure I'll go to my room some other time and you just go away. The question in this context is not what Mr. Englund subjectively would have did feel, but rather what a reasonable person. I agree. I agree. But if the maid is in my room, I just go away. And I'm thinking if the police are in your house, you might do the same thing. Well, here the police are outside of his house, but on the front porch. There are two of them in two separate cars, a uniform and arms. They are seven to 10 miles down the dead end road that ends at the Pacific Ocean. There is essentially nowhere for him to go. And beyond that, just a little longer. Yes. Beyond that, one of the last things that is said to him is that he is going to be required to step outside his house while officers apply for a search warrant. That's why I brought up the maid in the hotel room analogy. Under that combination of circumstances, particularly when he has been told the specific evidence that the officer believes he has, the officer tells him I have probable cause that a crime is being committed here. And he mentions drugs. He mentions weapons. He mentions drug paraphernalia. He mentions white powder that he tells Mr. Englund that he has seen on the end of Mr. Englund's nose. This combination of threatening language, a confrontation with guilt, a statement that he's going to be required to stay outside his own home. Did the policeman tell him he had to stay here on a porch or he couldn't go away? He did not. But he didn't tell him the contrary either. He didn't tell him that he was free to leave. He didn't tell him that he was free not to answer questions. He didn't tell him that he did not have to consent to the search. It would have been a simple matter for a police officer to say I'd like to ask you questions, but you don't have to answer them. I want to look in your house, but you don't have to let me. And if he had done that... I get called up by pollsters all the time. They want to ask me a few questions. They don't tell me I don't have to answer them. I just tell them I don't care to answer them and hang up. To begin with, they're not on your front porch in uniform and armed and accusing you of having committed a crime? Well, you know, it seems that you're damned if you do or you're damned if you don't. If you take him down to the station, the argument is certainly he's in custody. But if you talk to him on his front porch, he's in custody too. Was Judge Aiken right? She said after speaking with Cheyenne, Grant asked if defendant would speak to him on the porch outside the residence. Defendant replied that he would be happy to and walked outside onto the porch. Is that an accurate description? Yes. So there was a request, would you like to talk to me? And he said on the porch and he said he'd be happy to. Now, does that sound like custodial interrogation? By itself, maybe not. But given the totality of the circumstances, it is. The officer himself testified he didn't believe he had probable cause to arrest. Whether the officer believed it or not, he told Mr. Englund that he did. Is the term in custody limited strictly to physical custody, physical restraint? No. Or can it be a situation in which a person reasonably believes that a police officer is not going to let him go anyplace? That is the test. That's the fact. And then if the officer starts, he's in custody then, isn't he? Yes. If the officer starts talking to him, questioning him, asking questions, that's a Miranda situation, isn't it? It ought to be. That's your case? That's the case. And it would not have been difficult for this officer simply to say to Mr. Englund, you don't have to answer my questions if you don't want to, and then we wouldn't be here. Is there a case that's factually analogous to yours where you could say we have to say it's custodial interrogation because it's just like that case? I'm not aware of one. There are several that are close. To begin with, Orozco from the Supreme Court involved officers who were in the defendant's home. They came to his home and questioned him in his bedroom in the middle of the night. In the Bekowiz case, if I'm pronouncing that right, B-E-K-O-W-I-E-S, the circumstances were not quite as severe as Orozco, but this court felt that police officers questioning the defendant at his home essentially had that home under their control, and that created a custodial situation. The perhaps most analogous case is the Kim case from this court in which the defendant was questioned in her own store, having been accused of unlawful sales of methamphetamine precursor chemicals. A traffic officer stops a motorist for speeding. Is the speeder in custody? The cases would say, again, that depends. The cases will say, again, is he in custody or not? It depends on whether he feels free to leave. Well, he knows he can't leave. If the officer has his identification, his driver's license, then he's in custody. He can't leave. Even before he gets his driver's license, he's stopped. You think the officer puts his foot on the side of the car and the guy takes off? No. I'm thinking of after a discussion with the officer, is he free to leave? Oh, but before, you can't leave when a cop stops you for speeding. No, of course not. He puts on his siren and lights, you pull over and stop, and you don't go until he tells you you can go. They have to give you – but they don't give you Miranda warnings because you're sitting in your own car. They always say, how fast do you think you were going? What does that do with Miranda? At some point in the course of that stop, if the duration goes too long or the scope of the inquiry goes beyond a simple moving violation, Miranda warnings might be required. What does that do with Miranda? Well, it says the Miranda test is whether the person is either under formal arrest or has had his liberty restrained in some meaningful way. And in your situation, the person would have. If I could, I'd like to – Every traffic stop, then, would involve a Miranda problem. Every traffic stop involves a – Every traffic stop involves a potential Miranda problem. Do you think Miranda was – calls for that? Not in every traffic stop, but again, it will depend on the circumstances and what an officer has led a reasonable person to believe he may do under those circumstances. And that is the test. If I could, I'd like to reserve my remaining time. Thank you. Good morning, Your Honors. My name is Bud Fitzgerald, and I represent the government in the district court. Could you talk louder? I can't hear you. Pretend we're a jury. Project your voice. Let's try this again. Can you hear me now? Better. Good morning. My name is Bud Fitzgerald. I was the AUSA who prosecuted this case in the district court.  that at the time Mr. Engblom was encountered by the police on September 28th of 2002, he was not in custody, not subject to interrogation, and gave voluntary consent to a search of his mobile home, which yielded five firearms and resulted in his prosecution for armed career criminal. Now, with due respect to Mr. Weintraub, I would like to correct one fact, and that is you'll find nowhere in the record where the officer said that he had probable cause or where he told Mr. Engblom that he had probable cause to arrest him. What he said was to Mr. Engblom is that based on the fact that I see white powder under your nose, that I see the paraphernalia on the front porch, that I've had this interview of Cheyenne Joiner, the 12-year-old, I believe that I have probable cause to request a search warrant. And so based on that information, Mr. Engblom initiates a bargain. He says, well, what will happen to me if I let you in? And that's when he volunteers the fact that all you're going to find is what I show you, and what I show you is a .22 caliber pistol, which I keep around for my protection. So Judge Aiken correctly found that the circumstances under which the defendant's statements were made did not constitute custody or interrogation, and his statements that were made in relation to the firearms were covered by the public safety exception in the Quarles case. Do you have another front porch case that you can say this case is just like that case factually? Your Honor, I – People tend to argue these Miranda, the Fourth and Fifth Amendment cases. They tend to argue them as though the pronouncements in the cases were statutes, and I don't find that helpful. I'm more interested in factually analogous cases. That's true, Your Honor. There are fact-specific determinations, and there is no black and white in this area. Do you have one that's factually analogous? I do have the Orozco case, which I believe that Mr. Weintraub mentioned in his argument. He did, and in his reply brief, and I was going to ask you about that. What about the Orozco case? That's a Supreme Court case involving interrogation made in the person's own room at a boarding house. That's right, and the point of distinction there is, number one, it was in the person's room at the boarding house, not in an open area. So it was much more confined than the porch setting in this case. And the second fact to distinguish Orozco, which was actually more significant, which was that the individual was advised that he was not free to go, that he was under arrest. And so I think that those of you- He was told he was under arrest and not free to go. Right. He was the officer's- That pretty much makes it custody, doesn't it? It does make it custody. Those are not the facts of this case. We don't have an arrest situation, and the individual was not told that he was not free to go. As a matter of fact, the facts show that people milled around the site during the entire 15 to 18 minutes that this encounter took place before Mr. Engblom rendered his consent. So I think Orozco is significant because it shows, under those facts- Orozco is- What you just did was offer a distinction, and what I asked you for was a factually analogous case. You just presented to me a case that goes the wrong way for you, but you're saying it's not factually analogous. Do you have a factually analogous case, like a front porch or a front stoop chap, where the court holds it's not custodial, it's not interrogation? No, Your Honor. I look for such a case, and I would have included that. Seems like it must happen a lot. Well- What's your best case, then? Your Honor, I believe the best cases are the Terry Stock cases, because I think that this case is more like a Terry Stock than it is a custodial situation, where we have officers who are conducting a knock and talk based on informant information. They have reasonable suspicion that there is criminal activity under foot, and then they make other observations at the scene which actually strengthen their suspicion, and they stay within the parameters of the investigation. They don't attempt to broaden the investigation. It is a Terry Stock. What about the other case that counsel cites that also appears for the first time in the reply brief, Bacowes? Parenthetical suspect interrogated in home, reasonably believed he was not free to leave. I have that case, Your Honor, and I have it right here. It says that the agents requested the defendant to accompany them to several areas within the apartment. Is that like asking somebody to come out on the porch? Well, actually, it's not, Your Honor. I think that the difference is that we're now entering into the person's home as opposed to staying outside the home, and the area on the porch, I would say, probably has less of a privacy interest than the area inside. What were the other factors in Bacowes? I have one portion of the opinion highlighted, and this would be on page 12. Now that you've read the case and you can tell us the facts, the whole thing. Well, the basic facts were that the FBI had a warrant for the arrest of the fugitive when they entered the defendant's apartment. Excuse me, they had a warrant for the arrest? Yes. Okay, go ahead. They had a warrant for the arrest of the fugitive. They entered the defendant's apartment. The defendant knew that his apartment had been staked out. They requested the defendant to accompany them to several areas within the apartment. Did they tell him they had a warrant for his arrest? That is my understanding of the case. Surely you know this case. It's cited in the reply brief. You must have studied it, figured out how to deal with it at argument. And, in fact, I did look at it, Your Honor, and my understanding of it is, yes, they did tell him at that time that they had an arrest warrant. Well, the other side's shaking his head no. We'll soon find out whether you read the case the same way. Very well. But, Your Honor, I believe that this encounter, which took place on the porch, is quite unlike a situation where officers are entering someone's residence and telling them where to take them within that residence without the benefit of any kind of an advisement. I think that's much more like custody than the situation we have here. What other information would you like to bring to our attention in the remaining minute and 27 seconds? Well, Your Honor, just that, in addition to finding lack of custody, the district court found lack of interrogation, that, in fact, the information that was offered by the defendant was volunteer, in which case, even if there was custody, his statements were not the product of interrogation. Well, all the statements were in response to questions and inquiries, were they not? Actually, Your Honor, the facts of the case would indicate that the statements that the defendant made were in response to the agent's statement that he believed he had enough to request a search warrant. There was no question involved there. And then that is when the defendant said, well, what would happen if I... if it's designed to elicit incriminating information? Police do that all the time. I mean, I was there 23 years. They make a statement, and they kind of wait and see what it pulls out of somebody, and that's exactly what happened here. Well, what you're saying is correct, Your Honor, but I would say that in this case, it's at least as likely that Officer Grant intended to give the defendant enough information upon which he could make an informed decision. And the case that I cited in the brief, Moreno-Flores talks about that and says that telling somebody that you have enough probable cause to request a search warrant is giving them information which is going to help them make the correct decision. Thank you, counsel. Thank you. You may respond. And before I give you a chance to start, is it true that in Orozco the person talked to was told he was under arrest? No. No. In fact, it's not. Isn't this amazing? A simple fact like that, and we have a dispute. Genuine issue of material fact, surviving summary judgment. We'll read the case ourselves, I guess. The court describes the interpretation of one of the officers as to what the defendant's status was. But at no point is the defendant actually told. Well, what was he told? It does not say. It says according to the testimony of one of the officers, Petitioner was not free to go where he pleased and was, quote, under arrest, unquote. It does not say that Petitioner was ever told that. That is simply that officer's interpretation of whether the Petitioner was in custody or not. What about Bacowys? Bacowys, the warrant was for someone else. The warrant was for someone else who the defendant in Bacowys was suspected of harboring. And, in fact, the defendant, for whom there was no warrant, was, as in this case, specifically confronted with the possibility of criminal culpability. He was told that he might be criminally liable for harboring. But the warrant in that case was not for him. Is the test of voluntariness a test of really factually, voluntarily, or legally voluntarily? Now we're talking about consent to search. What's that? We're talking now about consent to search, I believe. Yes. Consent to get into the house. Is that consent? Do we determine that consent by a factual issue or determined by a legal issue? Well, it's largely a factual issue governed by a totality of the circumstances. And we've laid out the factors in our brief. What I'd like to point out there in whatever time I have simply is that Mr. Englund refused to give consent twice before his will was then overcome by the officer. Twice he told the officer that he did not want him coming into his house. First, when the officer told him he thought that there was a child in danger, Mr. Englund said, I don't want you to come inside. I'll bring the child out and you can talk to her. There was more discussion. The probable cause escalated. Mr. Englund was told, we have information about drug trafficking here. Can I come in and search to disprove those allegations? And Mr. Englund said, no, you may not come in. And, again, the officer escalated the confrontation, and eventually Mr. Englund's will was overcome. That's our argument on voluntariness. Counsel, I have long had trouble, as my previous question suggested to you, making any sense of the many, many published cases about Miranda and, to some degree, the Fourth Amendment, because they seem to go every which way. On Miranda, I can't make sense of the generalizations and reconcile them with routines like traffic stops, where you're not free to go, a policeman asks you questions. In serious traffic stops, like drunk driving stops, there's no question that the police are trying to elicit incriminating admissions. But nobody's ever required a Miranda warning when they say, were you driving the car? Could you get out of the car? Where have you been? In other words, what bar? I find it helpful to look at what Miranda says was the reason for the Miranda rule, when you read the case. And it was because in those days, according to the decision, police used to beat people up at the station house. So the Supreme Court wanted a prophylactic rule to protect people from getting beaten up at the station house and forced to confess. And if I look at it that way, it becomes very easy to sort out the cases. Not much risk the police are going to beat you up on the front porch of your house or when you're by a busy road. Gets a little dicier if you're in a room where nobody else can see you and they've told you you're not going anywhere. Why shouldn't I look at it that way? What I would say is that that was exactly the split in the court in the Orozco case, in the Supreme Court, in which the interrogation took place at home in the bedroom. There were two dissents in that case that said you have taken Miranda too far. We're no longer in the police station. The court didn't see it that way. The court sees Miranda as a much broader statement having to do with freedom to leave the company of an interrogating officer regardless of where you are. Thank you. Thank you, counsel. The case just started. Is the order submitted? Give me a copy of the record. Thanks. The next case is Bowen v. Lampert.
judges: Ferguson, Trott, Kleinfeld